DONALD PARRY ET AL., APPELLEES AND CROSS-APPELLANTS, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A CORPORATION, ET AL., APPELLANTS.

216 N. W. 2d 875

Filed April 11, 1974. No. 39269.

Ray C. Simmons, for appellants.

Winkle & Allphin, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and BUCKLEY, District Judge.

McCOWN, J.

This is an action for reformation of an automobile insurance policy by the addition of a provision for $5,000 death indemnity coverage and the removal of a limitation of $1,000 for funeral expenses under the medical coverage provisions. The trial court found generally for the plaintiffs on the death indemnity coverage issue and against them on the funeral expense limitation issue, and entered judgment for $5,000, plus interest and attorney's fees. The defendants have appealed and plaintiffs have cross-appealed.

The plaintiffs, Donald and Virginia Parry, lived on a farm near Newman Grove, Nebraska. They were the parents of three daughters, all of whom were single at the times relevant here. On February 26, 1972, the plaintiffs had five motor vehicles, all of which were insured by the defendant, State Farm Mutual Automobile Insurance Company, under five separate policies of insurance, each with a different renewal date and on

each of which the premiums were payable semiannually. The plaintiffs had carried all their motor vehicle insurance with the defendant insurance company for a period of approximately 10 years and relied upon the agent to provide coverage. There were three passenger cars, one pickup, and one truck insured under the five policies.

The plaintiffs, Donald and Virginia Parry, were the named insureds in a policy covering a 1968 Dodge automobile, and were also named as the persons insured for $5,000 each under coverage S (Accidental death benefit coverage). Only the plaintiffs' names appeared on that policy.

The insurance policy on a 1967 Cougar automobile named the plaintiff, Donald Parry, and the two older daughters, Ann and Nancy, as the three named insureds. Ann and Nancy were also named as the two persons insured for $5,000 each under coverage S on that policy.

The insurance policy covering a 1966 Dodge Charger designated the plaintiff, Donald Parry, and his oldest daughter, Ann, as the named insureds and did not name any individual as insured under coverage S.

The insurance policy covering a Ford truck designated the plaintiffs, Donald Parry and Virginia Parry, as the named insureds and did not name any persons as insured under coverage S. The insurance policy on the pickup truck was not introduced into evidence but is assumed to carry the same coverage as the truck.

The coverage for accidental death benefits (coverage S) is supplementary coverage which must be specifically requested. Persons insured under that coverage are only those specifically named, and only for the amounts specified for each person. A separate additional premium is paid for each person named under the coverage. Persons insured under coverage S and the amount of insurance for each is shown separately on the first page of the policy.

The plaintiff, Donald Parry, was a named insured on

all five of the policies. The plaintiff, Virginia Parry, was a named insured under three of them. The plaintiffs' daughter, Ann, was a named insured on two policies and the plaintiffs' daughter, Nancy, was a named insured on one policy. The plaintiffs, Donald and Virginia Parry, were named as persons insured under coverage S on one policy. Ann and Nancy, the two older daughters, were named as persons insured under coverage S on another policy. The remaining three policies did not include any S coverage for anyone.

Plaintiffs had notified the defendants at the time their daughter, Ann, became 16 and began to drive in 1966, and again when Nancy became 16 and began to drive in 1967. They were not named in any policy however until May 8, 1969. On that date, both were designated as named insureds, and both named as persons insured under coverage S in the policy covering the 1967 Cougar.

The plaintiffs' youngest daughter, Connie, became 16 years old on March 12, 1971. About 6 months before that date when Connie obtained her learner's permit, her mother, Virginia Parry, testified that she called the insurance agent and told him that Connie would be driving "our car." Plaintiffs' evidence is that at about the time of Connie's birthday in the spring of 1971, her father, the plaintiff, Donald Parry, called the defendant insurance agent by telephone and "just told him I wanted her put on the policy like the rest of us, added on like the rest of us." He testified that the accidental death benefit "was not even mentioned. I just told him I wanted her added on like the rest of us." Plaintiff, Donald Parry, testified that he did not specify which car or cars he wanted Connie added on, nor which car she would be driving. According to plaintiffs' testimony, the defendant insurance agent came to their home a few days thereafter and obtained the num-

ber on the driver's license of Connie and checked a driver's education certificate of hers. There was no discussion about any $5,000 coverage or any $5,000 death benefit. Thereafter the plaintiffs continued to pay the insurance premiums as they were billed until the accident which gave rise to this litigation.

The defendant insurance agent testified that he had no recollection of a telephone call with the plaintiffs or either of them at the time Connie obtained her learner's permit or at the time she obtained a driver's license. He also testified that the first time he was even aware that plaintiffs had a daughter named Connie was after an accident which Connie had in January of 1972, when she was driving the 1968 Dodge automobile. That accident was reported by plaintiff, Donald Parry, to the defendant insurance agent and apparently satisfactorily adjusted.

The evidence is undisputed that Connie, as a member of the household, was insured under all her father's insurance policies, whether she was a named insured or not, except for coverage S. It is also undisputed that the addition of Connie's name to the policy as a named insured would not have changed the premium rate for any coverage other than coverage S. If she had been named as a person insured under coverage S, there would have been an additional premium for that specific coverage, although the amount of the premium is not specified.

On February 26, 1972, Connie was killed in an accident while driving the 1968 Dodge automobile. The named insureds on the policy on that car were the plaintiffs, Donald and Virginia Parry, and each of them were also designated as a person insured under the S coverage in the amount of $5,000 each. Connie's name did not appear on this policy nor on any other policy held by the plaintiffs.

The funeral expenses were $1,354.70. The defend-

ants paid the collision loss and the sum of $1,000 specified in the policy as the limitation of liability under coverage M "for funeral expenses incurred for each person." This action followed.

This action seeks only to reform the automobile insurance policies covering the 1968 Dodge and the 1967 Cougar. A suit to reform an instrument is an action in equity. In all appeals from the District Court to the Supreme Court in suits in equity, it is the duty of this court to retry the issues of fact involved upon the evidence in the record and upon such trial de novo reach an independent conclusion. See § 25-1925, R. R. S. 1943.

Plaintiffs' right to reform these automobile insurance policies rests upon the rule approved by this court in Du Teau Co., Inc. v. New Hampshire Fire Ins. Co., 156 Neb. 690, 57 N. W. 2d 663: " 'When a soliciting agent of an insurance company and the insured mutually agree upon the terms and conditions of the insurance contract, and the policy, later issued by the company, omits one of the essential elements of the contract, which is not discovered by the insured until after a loss occurs, he may then have the policy reformed so as to express the real agreement of the parties, and his failure to promptly examine the policy when received and discover the departure therein from the real agreement will not defeat his right to have reformation of the policy.' "

In that same case however, this court also stated: "In an action for reformation of a written instrument, the burden rests upon the moving party of overcoming the strong presumption arising from the terms of the written instrument. If the proofs are doubtful and unsatisfactory and if there is a failure to overcome this presumption by testimony entirely *plain and convincing beyond reasonable controversy,* the writing will be held

to express correctly the intention of the parties." (Emphasis ours.)

The same rule was similarly expressed in a Nebraska case in the federal court: " 'The party alleging the mistake must show exactly in what it consists and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points. * * *.' The burden of proof rests upon the complainant and, to sustain it, *evidence that is plain and convincing beyond reasonable controversy is required. A mere preponderance of the evidence is not sufficient."* (Emphasis ours.) Maryland Casualty Co. v. United States for Use of Green, 169 F. 2d 102 (8th Cir., 1948).

The evidence of the plaintiffs fails to establish beyond reasonable controversy that the insurance agent and the plaintiffs ever reached actual agreement as to the specific terms and conditions of the alleged reformation or which policy or policies were to be affected. This is particularly important where the alleged agreement involves supplemental coverage but the language used could be used or applied to primary or supplemental coverage or both. The evidence of plaintiffs was not plain and convincing beyond reasonable controversy and was insufficient to overcome the presumption that the terms of the written policy or policies of insurance were binding upon the parties.

The plaintiffs also assert in their cross-appeal that they are entitled to avoid the limitation of liability to $1,000 for "funeral expenses" under coverage M by classifying the costs involved in the funeral as "services" and "expenses," or by dividing the total sum of $1,354.70 between two or more insurance policies. The specific language of the policies prevents the latter interpretation, and no realistic interpretation of "funeral expenses" could properly exclude the professional services of a funeral director nor differentiate such costs

from other funeral expenses. In addition, there is simply no evidence to support the allegations for reformation on this issue, and this claim was properly dismissed.

That portion of the judgment of the District Court denying plaintiffs' claim for reimbursement for funeral expenses was correct and plaintiffs' cross-appeal has no merit. That portion of the judgment for plaintiffs on the issue of death indemnity coverage and for attorney's fees and costs is reversed and plaintiffs' cause of action is dismissed.

REVERSED AND DISMISSED.